## Sarkuni v. AAA Travel Agency

*N. Timothy Guarneschelli,* for plaintiff.
*Luther E. Milspaw Jr.,* for defendant.

DOWLING, *J.,* March 5, 1991—In Thomas Hardy's wonderful novelistic tragedy *Tess of the D'Urbervilles,* the heroine, plagued by guilt over her shady past, slips a letter to her current lover under his door, in which she confesses the truth about herself. When she sees him again, he is as warm to her as ever, which leads her to believe that he now knows and forgives all. Only later does she discover that when she pushed the envelope under the door, it also passed under the carpet inside the room; so that all of the subsequent statements made by both people were, in fact, predicated upon reciprocal misunderstandings—which ultimately led to tragic consequences.

The current case is an illustration of this same principle—that the mere delivery of a document, in what may seem like a surefire manner, is quite possibly an exercise in futility unless it is handled with an absolute care and attention to all points of possible mistake. Since the matter at bar involves the proper service of process—a procedure for which a number of objective guidelines exist—it is to be hoped that we will be more successful than was poor Tess in plotting the correct route from dispatch to receipt.

On November 16, 1988, plaintiff, Movses J. Sarkuni, filed a complaint against the three named defendants, alleging that he was the victim of improperly drawn travel plans which forced him to incur unnecessary expenses and difficulties while on a trip around the world in January 1988. A writ of summons was filed on November 4, 1988, followed by a

complaint on November 16. All of the defendants answered in timely fashion except Qantas, which did not reply. As a consequence of this failure to respond, a default judgment was taken by plaintiff against Qantas on January 10, 1989.

Qantas has moved to have the default judgment opened and/or struck off. It alleges five reasons why this court should adopt this policy:

(1) Qantas contends that the praecipe for entry of judgment failed to take into account the fact that Qantas is a wholly owned subsidiary of the government of Australia; that service of process upon it is thus governed by the Foreign Service Immunities Act, 28 U.S.C. §1608(b); and that it was thus improper for service to be made (as it was) on Moffett B. Roller of the law firm of Condon and Forsyth in Washington, D.C. Although one of Condon's partners was or is a registered agent for Qantas, Roller himself was neither an officer nor an agent of the airline.*

---

\* The applicable section of the law reads:

"(b) Service in the courts of the United States and of the states shall be made upon an agency or instrumentality of a foreign state:

"(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

"(2) if no special arrangement exists, by delivery of a copy of the summons and complaint *either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States;* or in accordance with an applicable international convention on service of judicial documents; or

"(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state —

"(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(2) The FSIA, according to defendant, allows a foreign instrumentality 60 days in which to respond to a complaint; and that, since the alleged date of service on Moffett Roller was November 28, 1988 and the date of default judgment was January 10, 1989, this requirement was not adhered to.

(3) Section 1608(e) of the FSIA requires that any entry of a default judgment entered against a foreign instrumentality be accompanied by evidence establishing the claimant's right to relief. Plaintiff's alleged failure to do this justifies a striking off of the judgment.

(4) Qantas further argues that a letter sent on December 16, 1988 to plaintiff's attorney by Kevin Sherlock, an attorney with Moffett Roller's law firm, did not fulfill the 10-day notice requirement regarding notice of intent to enter a default judgment under Pa.R.C.P. §237.1. That letter read, in pertinent part:

"This letter confirms our phone conversation of December 16, 1988, during which you agreed to permit Qantas to file its answer or otherwise plead by December 31, 1988. Furthermore, it is our understanding that you will not attempt to take default against Qantas at this time. . . ."

(5) Finally, Qantas declares that, if the court does not see fit to strike off the judgment, it should be opened on the grounds that Qantas, having meritorious defenses both to the action itself and to its alleged failure to respond, and having moved to open in prompt and timely fashion, should not now be penalized.

---

"(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

"(C) as directed by order of the court consistent with the law of the place where service is to be made." (emphasis supplied)

We must grant the motion of Qantas to have the default judgment stricken off. This decision is occasioned less by any of the comparatively subjective reasons given by Qantas in the last three of the five assertions set forth above than by the specific insufficiencies on the face of the record, which are violative of the procedures laid down for both service of process and the taking of default judgments in such matters.

It must be conceded, with reference to point 1 above, that plaintiff's contention that there was constructive notice to Qantas of the pendency of the suit seems, by the evidence before us, to be accurate. Thomas Whalen, a registered agent for Qantas, who apparently met the criteria for a recipient of service set down in 28 U.S.C. §1608, was or is a partner at the same law firm as Moffett Roller, and Roller's testimony leaves little doubt that Qantas was informed through Moffett Roller of the suit. That, however, is essentially an ancillary point to the main issue, which is that even individuals whose physical proximity to the person who is actually authorized to accept service, or whose professional duties are interwoven with those of the proper party, have repeatedly been held to be insufficient substitutes for the correct individual. Two of the many cases where the courts have assessed this problem are *Alberti v. Enpresa Nicaraguense de la Carne,* 705 F.2d 250 (C.A. Ill. 1983), where service upon the Nicaraguan ambassador to the United States was not held to be sufficient process as against the Nicaraguan foreign minister; and *Le-Donne v. Gulf Air Inc.,* 700 F.Supp. 1400 (E.D. Va. 1988), where the fact that actual notice of a complaint was received by an officer of a joint stock company was deemed insufficient, even though he acknowledged receipt of it in a telephone conversation and promised to follow up on it. In both of these

cases, as in the case at bar, the issue is not whether or not it is likely that an error of this sort will keep the proper parties from becoming informed of the pendency of litigation, but the fact that, for the sake of the consistency, clarity and reliability of proce-dure, service and notice must be given within unambiguous parameters. Where it is not, the service must be found insufficient, and a default judgment entered on that basis must be stricken. *Franklin Interiors v. Wall of Fame Management Inc.,* 510 Pa. 597, 511 A.2d 761 (1986).

Also, since plaintiff apparently does not contest that November 21, 1988 was the date of whatever service did occur (constructive or actual, legally sufficient or insufficient), there would seem to be little doubt that the 60-day period for answer mandated by FSIA sections 1608(d) was not allowed to Qantas as it should have been. To say, as plaintiff does, that this premature taking of the default judgment is somehow diluted or even canceled out by the alleged failure of the defendant to then file a timely answer is a misdirected view; since to accept such a proposition would put a premium upon litigants violating procedure and thereafter shifting the burden to the opposing party to proceed as if nothing had happened. This is an approach to the problem that cannot be countenanced.

We do not feel, in light of the above facts, that it is necessary for us to delve further into the various elements raised by the two sides in this case. It is clear from the above factors that, even if all other considerations were to be resolved in plaintiff's favor, the aspects of this case that we have discussed would require a granting of a new opportunity to defendant to answer the charges in this matter.

Accordingly, we enter the following

And now, March 5, 1991, the motion of defendant Qantas Airlines to have the default judgment entered in the instant case on January 10, 1989 stricken off is hereby granted.